BEFORE THE FIRST DIVISION, APRIL 3, 1951

**No. 55412.**—Simon Beer & Co. *v.* United States, protests 146206–K and 147575–K (New York).

OLIVER, Chief Judge:   By this action, plaintiff seeks a refund of monies claimed to have been illegally collected on certain leather-covered compacts exported from South America and entered at the port of New York.   These compacts were assessed with duty at rates equivalent to 65 per centum ad valorem under paragraph 1527 (c) (2), Tariff Act of 1930, as modified by the French Trade Agreement (T. D. 48316), as "Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person,   *   *   * (2) Composed wholly or in chief value of metal   *   *   *   ."   They are claimed properly dutiable at 25 per centum ad valorem under paragraph 1531, as modified by the trade agreement with the United Kingdom (T. D. 49753), as "manufactures of leather,   *   *   *   , or of which leather,   *   *   *   is the component material of chief value, not specially provided for,   *   *   *   ."

The sole issue presented for determination is whether these compacts are in chief value of metal or in chief value of leather.   The classification of the collector is presumed to be correct and plaintiff has assumed the burden of overcoming this presumption and of affirmatively establishing its claim.   There is no sample of the imported article before us.   The only evidence is a commission duly issued out of this court and executed by one Samuel Beer, the manager of the factory

:that manufactured the articles before us. In reply to the interrogatories con-tained in the commission (no cross-interrogatories were filed by the defendant), the witness gave detailed description of the method of manufacture as follows:

First leather and cardboard are cut, shaved then and ironed. The cardboard is thinned by shaving with a knife. A filling is put upon the cardboard, then the leather is glued upon the filling and cardboard. It is then placed in the frame of the compact with glue and over it a round cord is placed, which fastens the leather in the frame. Then the powder screen is placed in cardboard and lined with leather and cloth. The powder-puff is purchased readymade. El mirror is furnished bevelled and lined with leather and paper. It is then glued in the compact. The compact is then polished and each one is placed to its corresponding box.

In response to question as to cost of each material (leather, metal, glass, etc.), including overhead, "at the time said material was ready to be joined to another," the witness answered:

The costs in 1945 were as follows:

| | |
|---|---|
| Metal frame, polished, gilt and readymade _____m$n | 2. 90 |
| leather: cut, shaved and ironed _____ " | 4. |
| cut cardboard _____ " | 0. 05 |
| powder puff and screen _____ " | 0. 15 |
| mirror and glue _____ " | 0. 20 |

We are satisfied that this evidence establishes that these compacts are in chief value of leather and not in chief value of metal. There is, however, no evidence as to the values in 1944, the date when the merchandise in protest 147575–K was imported, and the plaintiff has not overcome the presumption of correctness attaching to the collector's classification of this importation.

We therefore sustain plaintiff's protest as to the merchandise covered by protest 146206–K (entries 721348 and 713342) and find same properly dutiable at 25 per centum ad valorem under paragraph 1531, Tariff Act of 1930, as modified by the trade agreement with the United Kingdom (T. D. 49753). Protest 147575–K (entry 703038) is overruled. Judgment will be rendered accordingly.